FILED

IN THE UNITED STATES DISTRICT COURT, MT

FOR THE DISTRICT OF MONTANA 30  AM 8 55

BILLINGS DIVISION  PATRICK E. ...   CLRK

BY _____
DEPUTY CLERK

JULIE DIMITROV, LAURETTA FERRANTI, )
LAURA JEAN COLE, and OPAL BLAIR,   )
                                   )
          Plaintiffs,              )
                                   ) CV-06-58-BLG-RWA
     v.                            )
                                   ) FINDINGS AND RECOMMENDATION
GALE NORTON, Secretary of the      ) OF U.S. MAGISTRATE JUDGE AND
DEPARTMENT OF THE INTERIOR;        ) ORDER
KATHLEEN CLARKE, Director, BUREAU  )
OF LAND MANAGEMENT; HOWARD LEMM,   )
Acting Montana State Director,     )
BUREAU OF LAND MANAGEMENT, BUREAU  )
OF LAND MANAGEMENT; and U.S.       )
DEPARTMENT OF THE INTERIOR,        )
                                   )
          Defendants.              )

This case is before the Court on a request for judicial review of the decision of the Interior Board of Land Appeals ("IBLA") in Julie Dimitrov, et al., 164 IBLA 278 (2005), wherein the IBLA affirmed the decision of the Montana State Office, Bureau of Land Management, declaring Plaintiffs' unpatented mining claims void by operation of law for failure to timely file small miner waiver certifications. The United States Magistrate Judge has considered the briefs and supporting materials submitted by the parties and, pursuant to 28 U.S.C. § 636 (b) (1) (B), recommends that the Court reverse the decision of the IBLA and reinstate the mining claims.

## I.

### BACKGROUND

Plaintiffs were the holders of 29 unpatented mining claims in

1

the Gallatin National Forest, near Emigrant Creek and Chico Hot Springs. The claims had been held by members of their family for many years, until BLM deemed 28 of them forfeited by operation of law for Plaintiffs' failure to furnish claim maintenance fees or qualify for waiver of those fees for the 1998 assessment year. See BLM decision, August 31, 1999. Plaintiffs appealed that decision to the IBLA, and the BLM decision was affirmed on January 14, 2005. The present action followed.

## II.

### STANDARD OF REVIEW

In an action for judicial review of an agency decision, the scope of the Court's inquiry is quite limited. Essentially, the Court may not substitute its judgment for that of the agency, but must uphold the IBLA's decision if, after review of the entire record of the underlying proceedings, the Court finds that it is supported by substantial evidence and is not arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. Cranston v. Clark, 767 F.2d 1319, 1320 (9th Cir. 1985) (citing 5 U.S.C. § 706(2)(A), (E); Walker v. Navajo-Hopi Indian Relocation Commission, 728 F.2d 1276, 1278 (9th Cir. 1984)).

## III.

### DISCUSSION

Under the Omnibus Budget Reconciliation Act of August 10, 1993, and regulations thereunder, Plaintiffs were required to pay a maintenance fee of $100 for each mining claim held by them, on or before August 31, 1997, to hold the claims for the 1998 assessment

2

year. 43 C.F.R. §3833.1-5(b).  The deadline for the 1998 assessment
year was extended until September 2, 1997, because August 31st fell
on a Sunday, and Monday, September 1st, was a legal holiday.

The required claim maintenance fee could be waived if each
claimant certified two things: (1) that on the date payment was
due, he or she and all related parties[1] held not more than 10
mining claims on public lands, and (2) that all required assessment
work to maintain the claims had been performed.  30 U.S.C.
§28f(d)(1).

Regulations promulgated under § 28f set forth additional
requirements for obtaining a waiver, and establish a deadline for
filing the waiver certification. 43 C.F.R. § 3833.1-7.
Specifically,

> The small miner shall document, as provided in
> this paragraph (d), the claimed waiver for
> each assessment year a small mining waiver is
> claimed, certified, and attested to under
> penalty of 18 U.S.C. 1001.  The statement
> shall contain:
>
>> (1) The mining claim and site names
>> and BLM serial numbers assigned to
>> the mining claims and sites held by
>> the small miner;
>>
>> (2) A declaration by the claimant
>> and all related parties that they
>> own no more than 10 mining claims
>> and sites in total nationwide on the
>> date the waiver statement is due;
>>
>> (3) A declaration that specifies
>> that the assessment work
>> requirements have been or will be

---

[1]    There are no "related parties" involved in this case,
as the terms is defined in 30 U.S.C. § 28f(d)(2).

> completed by the date the payment is
> due, which is each August 31, for
> the assessment year just ending;
>
> (4) The names and addresses of all
> owners maintaining an interest in
> the mining claims and sites; and
>
> (5) The signatures of all the owners
> of the mining claims and sites for
> which a waiver is claimed.

43 C.F.R. § 3833.1-7(d)(1)-(5).

The regulations further dictate the consequences of failure to

comply with the assessment and waiver provisions:

> "[F]ailure to file the documents required by
> §3833.1-7(d) within the time periods
> prescribed therein for claimants who also fail
> to pay the maintenance fee, shall be deemed
> conclusively to constitute a forfeiture of the
> mining claim, mill site, or tunnel site."

43 C.F.R. § 3833.4(a)(2).

> Failure to perform required assessment work
> for the previous assessment year "by the
> waiver statement filing deadline" will result
> in forfeiture of the mining claims "under the
> invalid waiver certification."

43 C.F.R. § 3833.4(a)(3).

> "Failure to list the 10 or fewer mining
> claims...for which the fee is requested to be
> waived...will result in the affected mining
> claims...being deemed abandoned by the owner
> or owners thereof."

43 C.F.R. § 3833.4(a)(4).

> Failure to file the complete information
> required in ... 3833.1-7(d)..., when the
> document is otherwise filed on time, shall not
> be conclusively deemed to constitute an
> abandonment or forfeiture of the claim or
> site, but such information shall be submitted
> within 30 days of receipt of a notice from the
> authorized officer calling for such
> information. Failure to submit the information

4

> requested by the decision of the authorized
> officer shall result in the mining
> claim...being deemed abandoned by the owner.

43 C.F.R. § 3833.4(b).

In this case, the Plaintiffs timely submitted a three page filing to the BLM, accompanied by a check in the amount of $140.00. The documents were postmarked on September 2, 1997, and received by BLM on September 5, 1997. The first page was entitled "Affidavit of Annual Representation Work," and described the maintenance work performed on the 29 claims at issue and the value of that work.[2] The second page listed the 29 claims by site name and BLM serial number. The claims were then grouped in five separate groups, with a letter (A,B,C,D, and E) assigned to each group. The third page associated the names of one or more family members to each of the letters assigned to the claims on page 2, thereby designating the ownership of each of the claims listed on the previous page. Plaintiffs further advised BLM that "[t]here are eighteen other claims that are in the family that will be filed by Merle Boyes." The filing was received from, but not actually signed by, Plaintiff Laura Jean Cole.

Later, on September 29, 1997, Plaintiffs supplemented their September 2, 1997, filing by mailing five "Maintenance Fee Payment Waiver Certification" forms to BLM, one for each ownership group reflected in the original filing. The waiver certificates were received by BLM on September 30, 1997.

---

[2]     The BLM did not dispute that all required assessment work was, in fact, performed.

5

On October 9, 1997, BLM declared 28 of the 29 mining claims forfeited[3], based on the Plaintiff's asserted failure to either pay the maintenance assessment or file a timely waiver certificate. The decision was appealed to the IBLA, where it was set aside for failure to properly identify which claims were declared forfeited. The BLM issued a new decision on August 31, 1999, again declaring the claims forfeited.  Again, Plaintiffs appealed to the IBLA; this time the BLM decision was affirmed.

Plaintiffs now seek judicial review of the IBLA decision affirming the BLM's forfeiture decision.  The question on review is whether the certification defect in Plaintiffs' original filing warranted automatic forfeiture, as the IBLA held, or whether it was a curable defect, as Plaintiffs argue.  More specifically, the Court must determine whether the IBLA's interpretation of the applicable statute and regulations was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. The undersigned finds that it was, for the following reasons.

As noted above, the requirements for obtaining a waiver of claim maintenance fees are initially established by statute, and involve a claimant's certification "that on the date the payment was due" he or she held no more than ten claims, and that required assessment work had been performed.  30 U.S.C. § 28f(d)(1). While the statute dictates the substance of the required certification,

---

[3]      One claim survived forfeiture because the BLM paid the assessment fee for that claim out of the funds remitted by Plaintiffs on September 2, 1997.

6

it is silent as to its timing.  This and other requirements are established by regulation.  See  43 C.F.R. § 3833.1-7.

It is undisputed that Plaintiffs' first filing with the BLM, on September 2, 1997, was timely.  However, it is equally undisputed that the first filing did not meet all the requirements for obtaining a waiver.  Specifically, the initial filing lacked a timely certification or declaration that each claimant did not own more than 10 mining claims[4].  The IBLA interpreted this deficiency as constituting a "failure to file" under 43 C.F.R. §3833.4(a)(2), and conclusively deemed the claims forfeited as a result.

In so deciding, the IBLA concluded that the waiver certification forms received by the BLM on September 30, 1997, were untimely, stating that "[c]ertification that on the date the payment of the maintenance fee was due the claimant and all related parties held not more than 10 mining claims, mill sites, or tunnel sites, or any combination thereof, on public lands is essential to complying with the statutory requirement and the failure to make it cannot be cured."  IBLA decision pg. 4-8.

It is true that a claimant cannot qualify for a small miner waiver when no document which might be construed as a waiver application (or certification) was filed on or before the September

---

[4]     Other defects in the filing, such as the failure to list individual names, addresses, and signatures of all claimants were not addressed by the IBLA and were not relied upon in its forfeiture decision.  IBLA decision, n. 11.

1, deadline." <u>Beverly D. Glass</u>, 167 IBLA 388 (2006). However, "Congress' intent * * * is clearly to permit a claimant to avoid forfeiture where a timely, but defective[,] certification is filed, and the claimant thereafter cures the defect or pays the maintenance fee." <u>Id</u>. (citing <u>Otto Adams</u>, 155 IBLA 1, 4 (2001)).

In this case, the documents initially filed by Plaintiffs easily could and should have been construed as an application or request for a waiver, within the meaning of the statute and its implementing regulations. The filing was timely, and the documents provided by Plaintiffs identified the claims by name and BLM serial number and identified the owners of each of the claims. None of the individual owners was listed as owning more than 10 claims. [5] The documents included a description of the maintenance work that had been performed on the claims and the value of the work, and were accompanied by the requisite processing fee. Thus, while Plaintiffs did not use the optional BLM-prescribed forms and did not actually certify the information required by 43 CFR 3833.1-7(d) (2) under penalty of 18 U.S.C. § 1001, the information conveyed was nevertheless sufficiently complete to plainly put the BLM on

---

[5]

Plaintiffs' statement that "[t]here are eighteen other claims that are in the family that will be filed by Merle Boyes" was interpreted by the IBLA as possibly indicating noncompliance with the requirement that a claimant and related parties not hold more than 10 mining claims.   However, the IBLA did not go so far as to find that this was the case, and in fact the number of claims held was not a basis for the IBLA's decision, which was based solely on the absence of a certification.   A reasonable reading of the documents submitted by Plaintiffs shows that while referencing other family claims, Plaintiffs did not in any manner suggest that they or a "related party" actually held any of those claims.

8

notice that Plaintiffs sought a waiver of the assessment fee for the 1998 assessment year.

The BLM and IBLA applied a bright-line test, concluding that failure to certify the information provided in the first filing was fatal to the Plaintiff's mining claim rights.  However, the IBLA "in general adheres to the view that forfeitures are to be strictly construed." Jerry R. Grover, 160 IBLA 234, 258 (2003).  "Under [IBLA] precedents, where a statute does not provide for automatic forfeiture, the appropriate course of action is to provide a party an opportunity to comply with the law, in essence an opportunity to 'cure' the noncompliance." Id. at 259; see also Production Industries Corp., 138 IBLA 183 (1997) ("We are thus not inclined to find that a mining claim is abandoned and void and therefore forfeited in the absence of lack of compliance with the statute itself.")

Consistent with that view, the IBLA has previously stated that an otherwise timely waiver certification that was defective because it was not signed was curable.  See L.R. Church, 155 IBLA 367, 371-372 (2001).  An unsigned certification is as ineffective as no certification at all; in neither case has a valid waiver certification been timely filed, subject to the penalty of 18 U.S.C. § 1001.  If the absence of a certifying signature is curable, then so should these Plaintiffs' failure to provide certifying language and a signature along with the information that was submitted by them.

This is not a case where no documents were timely filed, and

9

no fee paid. Plaintiffs clearly attempted to comply with the statutory and regulatory requirements for obtaining a fee waiver in a timely manner. There is no evidence to show that the omission of certification language and other information required by § 3383.1-7(d) was anything but inadvertent and unintentional. If the BLM determined that Plaintiffs' otherwise-timely filing did not meet all of the requirements of § 3833.1-7(d), it should have provided Plaintiffs with notice of the deficiency and an opportunity to cure it, under 43 C.F.R. § 3833.4(b). Here, even without ever having received any such notice, Plaintiffs remedied the deficiency in less than the 30 days (after notice) that BLM would have been required to afford them to cure it. Under these circumstances, the BLM and IBLA acted arbitrarily, capriciously and contrary to law in declaring the claims forfeited; the forfeitures should be reversed, and the mining claims reinstated.

## RECOMMENDATION

For the foregoing reasons, and pursuant to 28 U.S.C. § 636 (b) (1) (B), the undersigned recommends that the District Court GRANT Plaintiffs' motion for summary judgment, and reverse the decision of the IBLA forfeiting 28 mining claims for failure to file a timely waiver application. The case should be remanded to the IBLA, with instructions to reinstate the leases upon compliance by Plaintiffs with the procedural requirements for doing so.

The parties shall have ten days from the date of service of these Findings and Recommendation in which to file objections pursuant to 28 U.S.C. § 636 (b) (1) and Rule 72(b), Fed.R.Civ. P..

10

The Clerk is directed to forthwith notify counsel of record of
the making of this Order.

Done and dated this _____ day of November, 2006.

_____
United States Magistrate Judge

11